UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-80160-CIV-MIDDLEBROOKS/JOHNSON

**GAINEY CORPORATION,**

    **Plaintiff,**

vs.

**XL INSURANCE AMERICA, INC.,**
**Previously known as WINTERTHUR**
**INTERNATIONAL AMERICAN**
**INSURANCE COMPANY,**

    **Defendant.**

_____/

## ORDER DENYING SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon the Plaintiff's Motion for Partial Summary Judgment (DE 52) and Defendant's Motion for Summary Judgment (DE 49). The Court has reviewed the Motion and is otherwise fully informed of the premises.

The Court first notes that summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See*

*Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment.  *See Earley*, 907 F.2d at 1081.  The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment.  *See Celotex*, 477 U.S. at 322.

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial.  *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).  Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts.  *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969).  If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment.  *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)("[T]he dispute about a material fact is genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255. With this standard in mind, I have reviewed the instant Motion as well as the underlying findings in this case, and find that there are disputed material facts which preclude the entry of summary judgment in this proceeding.

Underlying the instant action are the following relevant facts. Gainey is in the business of interstate transportation and trucking. XL Insurance is a foreign corporation engaged in the business of providing insurance coverage for businesses. XL issued a policy for excess insurance to Gainey (the "Excess Policy"). The Excess Policy furnished Gainey was to provide Gainey with additional coverage in the event that Gainey were to receive judgment against it in a legal proceeding in excess of the coverage provided by its primary insurer, in this case, Liberty Mutual (the "Primary Policy"). The Primary Policy afforded Gainey with $1,000,000 insurance per incident. The XL policy provided Gainey with an additional $4,000,000 in coverage per incident, but such coverage did not commence until such time as Gainey had met a "corridor self insured retention" of $1,000,000, which operates as a pseudo deductible. At the time involved herein, it is undisputed that Gainey had expended $350,000 of this $1,000,000 corridor/deductible.

3

At some point in 2002, one of a Gainey subsidiary's employees was killed in an accident resulting in a personal injury action against Gainey in the Florida state courts. Gainey via its Primary Policy coverage defended that action and asserted that the employee had been in the course of his employment at the time of the accident, and so was limited to recovery of death benefits in the amount of the Worker's Compensation maximum of $100,000. According to Gainey, a judgment of $100,000 would have negated the necessity of excess coverage and would have spared the Company a detrimental risk-grade increase. Gainey declined to settle the action. XL, asserts that contrary to Gainey's evaluation of its defense, it determined that a judgment well in excess of the Primary Policy, Gainey's corridor and the Excess Policy was likely. In an effort to minimize its exposure to what it deemed to be substantial liability, XL settled the underlying claim for an amount in excess of $1,650,000, the amount represented by Gainey's Primary Policy and remaining corridor.

The issue to be determined in the instant Motion is whether or not the Excess Policy allowed XL to make this settlement without Gainey's consent. Gainey states that XL did not have the authority to do so and requests that I enter summary judgment on this issue. XL counters that the policy did not require Gainey's consent, and that it is therefore entitled to summary judgment because it paid all of the amount in excess of the Primary Policy, including the $650,000 corridor remaining due to XL under the Excess Policy.

It is undisputed that the Excess Policy does not contain a specific provision which grants XL the authority to settle an underlying law suit without its Gainey's consent. Gainey asserts that its consent was required prior to any settlement because of the "Payment of Loss" provision which states that "[a]ny payment of loss by [XL] to the Insured under this Policy shall be made as

4

stated in the Schedule hereto." The Schedule states that "Payment of Loss to: To be agreed between the Insured and [XL] at the time of any Loss payment hereunder."

Gainey asserts that, when read together, these two provisions establish that no payment can be made absent and agreement between XL and Gainey. XL counters that Gainey misrepresents that the two provisions read together constitute a consent to settle clause, and that, in fact, the two provisions simply addresses the funding of any settlement or judgment. Further, XL posits that the Excess Policy is silent as to the issue of consent and authority to settle, and because the Excess Policy is silent, the matter is more appropriately resolved by looking to another of the policy's provision which provides that:

> This [the excess] Policy shall run concurrently with the [primary] Subject Policies and, except as provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Underlying Policy/ies.

XL asserts that the following provision of the underlying policy furnishes them with the authority to settle the underlying suit:

> We have the right and duty to defend any "Insured" against a "Suit" asking for such damages or a "Covered Pollution Cost or Expense." However, we have no duty to defend any "Insured" against a "Suit" seeking damages for "Bodily Injury" or "Property Damage" or a "Covered Pollution cost or Expense" to which this insurance does not apply. We may investigate and settle any claim or "Suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of insurance has been exhausted by payment of judgments or settlements.

In essence then, Gainey relies on the Excess Policy's "to be agreed upon at the time of loss" provision in the Excess Policy's schedule as requiring Gainey's consent in any proposed settlement, and so no settlement in the underlying case could be made by XL absent Gainey's express involvement and approval. Further, because it anticipated that the jury in that case would

5

find that the employee had been in the course of his employment at the time of his death, and because it did not consent to the settlement, Gainey is entitled to judgment as a matter of law. XL counters that Gainey is misreading the Excess Policy to require its express involvement and consent, when such consent is not required at all.

Before I turn to the substantive issue before me, I briefly address without prolonged explanation, two questions presented by the Parties regarding relevant choice of law issues. The first is the question of whether Florida or Michigan law should be applied to these proceedings. This action originally commenced in the United States District Court for the Western District of Michigan and was transferred here pursuant to 28 U.S.C. 1404(a) strictly for the convenience of the Parties. Gainey is a Michigan corporation, the Excess Policy was negotiated and executed in the state of Michigan. The sole tie to Florida relates to the fact that the underlying suit was litigated here. Under both Michigan and Florida law, it is clear that the State of Michigan has the most significant relationship to this dispute over the Excess Policy. *See, Lefarge Corp. v. Traveler's Indemnity Co.,* 118 F.3d 1511 (11th Cir. 1997). Accordingly, Michigan substantive law will apply.

The second question relates to two conflicting provisions within the Excess Policy itself. The first provides that the Excess Policy

> will be governed by the Law of England. Any dispute concerning the interpretation of the terms, conditions, limitation and/or exclusions contained therein is understood and agreed by both the Insured and the Company to be subject to English Law.

The second provision found within the same policy. It provides

> [a]ny dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained herein is understood and agreed by both the Insured and the Underwriters to be subject to the laws of the United States of America.

It is clear that these two provisions directly contradict each other, resulting in a classic case of contractual ambiguity. XL requests that I reconcile these conflicting provisions by determining that the "Law of England" provision addresses only the terms of the Policy's Schedule. Specifically and overly simplified, XL ask me to apply English law and determine that the Schedule's provision reading "Payment of Loss to: To be agreed between the Insured and [XL] at the time of any Loss payment hereunder," means simply that the Parties will need to agree as to whom is to receive payment under the policy. XL asserts that the American choice of law provision governs the rest of the Policy.

It is a well-settled principle in both the United States and England that contracts be read as a whole, not piecemeal. *Arbuthnott v. Fagan*, [1996] LRLR135; *Morley v. Automobile Club of Michigan*, 581 N.W.2d 237 (1998). As the choice of law provisions clearly contradict one another, and as I find no basis for finding that English law was intended to strictly apply to disputes over the Policy's Schedule, I determine that the law of the United States, more specifically, as discussed above, the law of Michigan shall govern the instant action.[1]

Moving on then to the question of whether or not the Policy required Gainey's consent to settle the underlying lawsuit, I turn once again to the provision on the Policy's Schedule which provides that "Payment of Loss to: To be agreed between the Insured and [XL] at the time of any Loss payment hereunder"

---

[1] I note that it appears to make little if any difference as far as the results herein are concerned whether Florida or Michigan law apply.

Under Michigan law, whether a contract provision is clear or ambiguous is a question of law to be decided by the Court. *Port Huron Educ. Assn., MEA/NEA v. Port Huron Area Sch. Dist.*, 452 Mich. 550 N.W. 2d 228, 237 (Mich. 1996); *Campbell v. Potash Corp. of Saskatchewan, Inc.,* 238 F.3d 792, 797 (6th Cir. 2001); *Ososki v. St. Paul Surplus Lines,* 156 F. Supp. 2d 669 (E.D. Mich. 2001). It is well-established that contract provisions are ambiguous if they "are reasonably and fairly susceptible to multiple understandings and meanings." *Equitable Life Assurance Society of the United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). Ambiguity is not created simply by disagreement amongst the parties as to the meaning of a contractual provision. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). Nor is ambiguity created by giving words a "forced or strained meaning." *Ososki*, 156 f. Supp. 2d 669. Rather, a court assessing whether a contractual provision is ambiguous must read the entire policy and give the words used their plain and common meaning. If the contract language is unclear or susceptible to multiple meaning, interpretation becomes a question of fact. *Zinchook v. Turkewycz*, 340 N.W. 2d 844 (Mich. 1983). If the court does find that a particular provision is ambiguous, then it is up to the trier of fact to determine the intent of the parties, and so, accordingly, summary judgment is inappropriate. *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 594 (6th Cir. 2001).

XL requests that I find that the Payment of Loss provision does not in any way address whether or not Gainey's consent to settlement was required, and that the Excess Policy was, in fact, silent on the issue of consent, and that therefore the terms of the Primary Policy govern, and that the underlying policy clearly authorizes the [relevant] insurer to settle any liability claims in its sole discretion. In other words, XL states that the Payment of Loss provision does not create

any ambiguity, and so, because the Primary Policy gave Liberty the ability to settle a claim for at its sole discretion, XL had the same authority.

Gainey counters that the Payment of Loss provision does create an ambiguity, especially in light of the manner by which the Parties conducted themselves before and during the underlying suit.  Specifically, Gainey asserts that "to be agreed upon at the time of loss" is reasonably susceptible to more than one meaning.  Specifically it suggests that despite XL's assertion that it can only read to mean that the Parties will agree upon  to whom, or in what form payment is to be made upon conclusion of a claim, it is just as easily read to mean that the Parties will agree upon whether payment will be made.  Further, Gainey asserts that it retains a self-insured corridor of $1,000,000 for which it is liable before XL's liability can attach, and so when the Excess Policy is read as a whole, it is clear that Gainey's consent is required insomuch as it has a right to defend its own exposure.[2]  Gainey additionally provides extrinsic evidence of the manner in which the Parties conducted themselves during this underlying litigation as well as a previous claim.  Specifically, Gainey introduces communications tending to support its contention that XL operated under the belief that Gainey's consent was required.

I find that when the Excess Policy is read as a whole, the language of the Payment of Loss provision is reasonably susceptible to more than one meaning, and that, as such, the question of what the Parties intended becomes a factual question rendering summary judgment for either Party inappropriate.  Accordingly, it is

---

[2] See exhibits to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

ORDERED and ADJUDGED that the Plaintiff's Motion for Partial Summary Judgement, and the Defendant's Cross Motion for Summary Judgement be, and are hereby, DENIED.  It is further

ORDERED and ADJUDGED that the Defendant's Motion for Determination of Foreign Law (DE 49) be and is hereby DENIED.  Further, pursuant to the Parties consent to the jurisdiction of the Honorable Linnea R. Johnson, and the Court's previous Order, it is further

ORDERED and ADJUDGED that all further proceedings in this matter shall be directed to Judge Johnson.

DONE and ORDERED in Chambers, at West Palm Beach, Florida this 19th day of December, 2007.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE